**[Cite as *Malagisi v. Marble Cliff Crossing Apts., L.L.C.*, 2020-Ohio-1034.]**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Charles Malagisi, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 19AP-475 |
| v. | : | (C.P.C. No. 17CV-10860) |
| Marble Cliff Crossing Apartments, LLC, et al., | : | (REGULAR CALENDAR) |
| | : | |
| Defendants-Appellees. | : | |
| | : | |

D E C I S I O N

Rendered on March 19, 2020

**On brief:** *Hastie Legal, LLC* and *Edward W. Hastie,* for appellant. **Argued:** *Edward W. Hastie.*

**On brief:** *Reminger Co., L.P.A.* and *Matthew L. Schrader,* for appellees. **Argued:** *Matthew L. Schrader.*

APPEAL from the Franklin County Court of Common Pleas

NELSON, J.

{¶ 1} Charles Malagisi has appealed from the trial court's grant of summary judgment to Marble Cliff Commons, LLC (even though his brief to us incorrectly specifies as the object of his efforts a different former defendant, Marble Cliff Crossings Apartments, LLC, which was granted judgment by a different entry than that listed in Mr. Malagisi's notice of appeal, *compare* July 22, 2019 Notice of Appeal *with* Appellant's Brief at 1). Because on this record we are obliged to conclude that whether the landlord's inspection of the workout facilities at the apartment where Mr. Malagisi lived was reasonable presents a question for the finder of fact, and that therefore there exists an unresolved issue as to whether Marble Cliff Commons had constructive knowledge of the exercise equipment defect that Mr. Malagasi claims caused him injury, we will reverse the summary judgment.

{¶ 2}   Mr. Malagisi lived with his girlfriend (now wife) at what we will call the Marble Cliff Commons apartment complex, where he was in the habit of using the fitness center roughly once every two weeks.  Malagisi Deposition at 8, 28.  He alleges that during his second year in residence, on April 30, 2014, he suffered injury to his right shoulder and bicep when the left end of the "Olympic bar" he was hoisting "fell off," leaving "weight on the right side of the bar * * * that yanked my arm."  *Id.* at 35.  His account is that he had added twenty-five pound weights to each side of the thirty-five pound bar ("I stuck the weight on, stuck the other weight on, then grabbed the pins and locked them both on"), completed "three to five" "deadlifts" taking the bar from the floor to his waist, and then began a "standing military press[ ]" when "[t]he left side fell off."  *Id.* at 31, 33-36.

{¶ 3}   He attributes the mishap to what he says was a missing "internal" bolt on the bar:  "There was no bolt on the left side, which means that fat part would slide off."  *Id.* at 37 (also saying:  "That [missing] bolt is internal.  It's set back in.  Unless you really were to look inside, you wouldn't notice it.").

{¶ 4}   Asked, "[h]ow long had that bolt been missing," Mr. Malagisi responds:  "I don't know."  *Id.* at 38.  He says he had observed nothing amiss when he added the weights:  "I mean, I never would have thought to check in there.  I mean, it's a large bolt.  I would assume if it was loose, you would see it hanging out past.  It bolts in flush, so – you know, if I saw it screwed out a little bit, I would have taken notice.  Everything looked normal."  *Id.* at 38.

{¶ 5}   Not immediately realizing that he was injured, he says, Mr. Malagisi carried the "broken bar" to the building office to complain.  *Id.* at 42-43, 47.  He sought medical attention the following week, was diagnosed with a torn labrum and rotator cuff and bicep injury, and had surgery that fall.  *Id.* at 52, 56.

{¶ 6}   In the fullness of time, he filed and then re-filed a complaint naming Marble Cliff Commons, along with other defendants not relevant to this appeal.  Against Marble Cliff Commons, Mr. Malagisi alleged alternative negligence theories and also advanced a breach of contract claim.

{¶ 7}   When it moved for summary judgment, Marble Cliff Commons cited to Mr. Malagisi's deposition and also submitted the affidavit testimony of apartment manager Shannon Ray.  Ms. Ray averred, among other matters, that Marble Cliff Commons

managers had contracted with an enterprise called Design Fitness "to service, repair, and maintain the fitness equipment located within the fitness center" at the apartment complex; "[e]ach time that Design Fitness would perform work at Marble Cliff Commons" to provide such services, "it would notify Marble Cliff Commons whether any of the equipment required service or repair." Ray Affidavit at ¶ 7-8. In addition to work performed on August 18, 2011 and February 12, 2013, "[o]n April 15, 2014, Design Fitness inspected all of the fitness equipment located in the fitness center at Marble Cliff Commons and invoiced Marble Cliff Commons for those pieces of equipment that needed service or repair." *Id.* at ¶ 11-12. "Marble Cliff Commons was not advised by Design Fitness, following its April 15, 2014 inspection, that the fitness equipment described in the Complaint [the weightlifting bar] was in need of service or repair." *Id.* at ¶ 15. Rather, the Design Fitness invoice for that date reflected provision of unrelated items (two cables, a weight plate, and a "weight stack pin"), with parts and labor charges. *Id.* at ¶ 10 and Ex. 1.

{¶ 8} On the strength of Ms. Ray's affidavit and Mr. Malagisi's testimony, the trial court granted summary judgment to Marble Cliff Commons on all claims against it. The trial court accepted for purposes of analysis that "Plaintiff was injured by a piece of workout equipment at a gym owned and operated by Plaintiff's apartment complex." June 26, 2019 Decision and Entry at 1. And it correctly recited the summary judgment standard that summary judgment should not be granted unless, construing the evidence in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 2, citing *Bostic v. Connor*, 37 Ohio St.3d 144 (1988). The trial court recognized that the moving party must identify those portions of the record that " 'demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims,' " and that the nonmoving party then cannot rest on the mere allegations of the pleadings, but must point to specific facts showing a genuine question for trial. *Id.*, quoting *Dresher v. Burt*, 75 Ohio St.3d 280 (1996); *see also, e.g., Payne v. Ohio Performance Academy, Inc.*, 10th Dist. No. 17AP-202, 2017-Ohio-8006.

{¶ 9} The trial court then held that because Mr. Malagisi had not been a party to the lease signed by his girlfriend, he could not pursue a breach of contract claim. Decision and Entry at 3. (Mr. Malagisi does not appeal from that ruling against his contract claim.)

{¶ 10} Turning to issues of negligence, and seeing this as a " 'premises liability' " case, the trial court ruled that the nature of the duty owed by Marble Cliff Commons to Mr. Malagisi "pivots on the determination" of his status as an "invitee" or "licensee." *Id.* at 3-4, citing *Estill v. Waltz*, 10th Dist. No. 02AP-83, 2002-Ohio-5004 (not a landlord-tenant case). Mr. Malagisi was a licensee in the building's fitness center, the trial court concluded: "While he did have permission to use the gym," Marble Cliff Commons had not invited him to do so, and in any event, he had "entered the gym for his own benefit" and his "working out in no way benefited Marble Cliff." *Id.* at 4 (not discussing whether residents' use of other building amenities, including lobby couches, say, or elevators, would be subject to the same analysis). Therefore, the trial court ruled, "Marble Cliff only owed him a duty to refrain from willful, wanton, or reckless conduct." *Id.* at 5. Mr. Malagisi could not show breach of such a duty because "[a]t best [from Mr. Malagisi's perspective], Marble Cliff's actions rise to the level of a breach of ordinary care." *Id.* The trial court dismissed Mr. Malagisi's complaint with prejudice, issuing what the entry termed a final appealable order with no just cause for delay. *Id.*

{¶ 11} Mr. Malagisi hinges his appeal on two assignments of error:

> [I.] The trial court erred in dismissing Plaintiff's cause [of] action for negligence based on its determination that Mr. Malagisi was owed a lesser standard of care.
>
> [II.] The Trial Court erred in determining that MCC did not violate its duty to refrain from wanton, willful and reckless conduct in its effectively non-existent upkeep of the gym facilities.

{¶ 12} We examine a grant of summary judgment afresh, using the de novo standard of review. *Bae v. Dragoo & Assocs.*, 10th Dist. No. 03AP-254, 2004-Ohio-544, ¶ 6. " 'When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court.' " *Id.*, quoting *Mergenthal v. Star Banc Corp.*, 122 Ohio App.3d 100, 103 (12th Dist.1997).

{¶ 13} Mr. Malagisi argues that the standard of care governing these circumstances is found in statute, at R.C. 5321.04. Appellant's Brief at 10. Significantly, Marble Cliff Commons does not directly contest that proposition. *See* Appellee's Brief at 14 (noting instead that a "landlord is excused from liability under the Landlord Tenant Act if the

landlord neither knew nor should have known of the factual circumstances that caused any alleged violation of the Act"). Nor does Marble Cliff Commons here contest that the duty it owed Mr. Malagisi was the same as the duty it owed his girlfriend, whose name was on the lease. *See* Appellee's Brief at 1-2 (arguing that Mr. Malagisi testified that "he followed the terms of the lease agreement and the rules and regulations of Marble Cliff Commons, even though he did not sign the lease agreement"), 12 ("Marble Cliff Commons did not owe a *greater duty* to [Mr. Malagisi] than Marble Cliff owed to its tenants"); *compare Mann v. Northgate Investors, L.L.C.*, 138 Ohio St.3d 175, 2014-Ohio-455, ¶ 33 ("a landlord owes to a tenant's guest the same duty that the landlord owes a tenant").

{¶ 14} The statute provides in relevant part that a "landlord [of 'residential premises'] who is a party to a rental agreement shall * * * [m]ake all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition [and] [k]eep all common areas of the premises in a safe and sanitary condition." R.C. 5321.04(A)(2) and (3). " 'Residential premises' means a dwelling unit for residential use and occupancy and the structure of which it is a part, the facilities and appurtenances in it, and the grounds areas, and facilities for the use of tenants generally or the use of which is promised the tenant." R.C. 5321.01(C).

{¶ 15} The statute obviates the licensee/invitee distinction. "The legal duty that a landlord owes a tenant is not determined by the common-law classifications of invitee, licensee, and trespasser under the law of premises liability * * *." *Shump v. First Continental-Robinwood Assocs.*, 71 Ohio St.3d 414, 418 (1994). And the duties it creates "are nondelegable," for a "landlord may not shift to an independent contractor the responsibility of complying with laws designed for the physical safety of others." *Id.* at 421. By the same token, the statute imposes mandatory duties on the landlord that apply without regard to particular lease language. R.C. 5321.04; *compare Mann*, 2014-Ohio-455 at ¶ 33 ("violation of the duty imposed by R.C. 5321.04(A)(3) constitutes negligence per se").

{¶ 16} "Thus, a landlord owes a tenant, and therefore the tenant's guest, the duty to '[k]eep all common areas of the premises in a safe * * * condition,' pursuant to" statute. *Mann*, 2014-Ohio-455 at ¶ 33. That does not mean that a landlord is the insurer of its tenants against all harm from use of unsafe premises facilities. Rather, "a landlord will be excused from liability * * * if he neither knew nor should have known of the factual

circumstances that caused the violation" for not keeping the facilities reasonably safe. *Sikora v. Wenzel*, 88 Ohio St.3d 493 (2000), syllabus. Where the landlord does not cause or know of the unsafe condition, the issue is whether " 'the [landlord] by the exercise of reasonable care could have discovered the condition and the unreasonable risk involved therein and could have made the condition safe.' " *Mann* at ¶ 21, quoting 2 Restatement of the Law 2d, Torts, Section 360, as approved and adopted by *Shump*; *see also, e.g., Robinson v. Bates*, 112 Ohio St.3d 17, 2006-Ohio-6362, ¶ 23 ("Most statutes are construed to require that the actor take reasonable diligence and care to comply, and if after such diligence and care the actor is unable to comply, the violation will ordinarily be excused"); *Strayer v. Lindeman*, 68 Ohio St.2d 32, 35 (1981) (standard looks to whether harm was caused by landlord or landlord's "contractor's failure to exercise reasonable care to make the leased property reasonably safe").

{¶ 17} Inspections can serve to satisfy the landlord's duty, and, depending on the circumstances, need not always be undertaken by professional inspectors. *Lilly v. Bradford Invest. Co.*, 10th Dist. No. 06AP-1227, 2007-Ohio-2791, ¶ 30 ("given that [the landlord's agent] noticed no defect in the staircase during his above-noted inspection,* * * we conclude that the evidence failed to establish that [landlord] * * * should have known about a defect in the staircase prior to the accident"); *compare Collins v. Emro Marketing Co.*, 10th Dist. No. 98AP-1014, 1999 Ohio App. Lexis 2185, *15 (May 11, 1999) (not a Landlord Tenant Act case) ("[a]n owner will be found to have constructive knowledge of defects that would have been revealed by a reasonable inspection of the premises"); *Rawlings v. Springwood Apts. of Columbus, Ltd.*, 10th Dist. No. 18AP-359, 2018-Ohio-4845, ¶ 46 ("we find a genuine issue of material fact remains as to whether appellees had constructive notice of a defective condition or, in other words, should have known of factual circumstances that caused a violation of the landlord's duty under R.C. 5321.04(A)(3) to keep common areas in a safe condition").

{¶ 18} Marble Cliff Commons, while not abandoning its argument that Mr. Malagisi was a licensee pursuant to the rental agreement and its accompanying rules and regulations (a contract argument that the trial court did not adopt and that does not trump the duties imposed by statute), reasons more from cases involving invitee classifications and acknowledges that a " 'landowner's duty to invitees * * * includes the obligation to inspect

the premises to discover possible dangerous conditions.' " Appellee's Brief at 16, quoting the (non-landlord) case of *Rowe v. Pseekos*, 10th Dist. No. 13AP-889, 2014-Ohio-2024, ¶ 7 (internal citation omitted). " 'Should a landowner fail to conduct a reasonable inspection of the premises, the landowner will be charged with constructive knowledge of any latent defect which the landowner would have discovered had he or she conducted the reasonable inspection.' " *Id.*

{¶ 19} The undisputed evidence here, Marble Cliff Commons argues, shows that it "responsibly hired Design Fitness to service, repair, and maintain the fitness equipment located within the fitness center at Marble Cliff Commons. In fact, Design Fitness inspected the equipment located within the fitness center at Marble Cliff Commons on April 15, 2014, just two short weeks prior to the incident involving" Mr. Malagisi. Appellee's Brief at 12-13. Although Marble Cliff Commons could not insulate itself from statutory liability simply by hiring some other entity to perform inspections, *see Shump*, 71 Ohio St.3d at 418 (duties "are nondelegable"), we think it correct that Mr. Malagisi has not pointed to evidence suggesting that the April 15, 2014 inspection itself was flawed.

{¶ 20} But Marble Cliff Commons has not argued or yet put forward evidence that it paid attention to the weightlifting bar at any point between that April 15, 2014 visit from Design Fitness and the unfortunate events of two weeks later. And we do not believe that we are in a position to announce as a matter of law and on the facts construed in the light most favorable to Mr. Malagisi that such an interval is automatically reasonable in the context of exercise equipment provided by the landlord to its residents. Marble Cliff Commons told the trial court that the "record evidence establishes that Marble Cliff Commons' inspection of the premises was reasonable," April 19, 2019 Reply in Support of Summary Judgment at 3, but it provided no case citation for that proposition in this context. Nor does Marble Cliff Commons appear to have persuaded the trial court of the point. *See* Decision and Entry at 5 ("At best, Marble Cliff's actions rise to the level of a breach of ordinary care").

{¶ 21} Again, we read the statute and the decisional authority interpreting it to say that a landlord who does not know of an unsafe condition can be excused from the landlord's statutory duty if " 'by the exercise of reasonable care' " the landlord could not " 'have discovered the condition and the unreasonable risk involved.' " *See Mann*, 2014-

Ohio-455 at ¶ 21.  " '[W]hat is *reasonable* under the circumstances of a given case *is ordinarily a question for the trier of fact.*' " *State Farm Mut. Auto Ins. Co. v. Chatham Dev. Corp.*, 10th Dist. No. 94APE08-1243, 1995 Ohio App. Lexis 2398, * 10 (June 6, 1995) (citations omitted; emphasis in original) (adding, "[t]hus, this court must ascertain whether or not a reasonable trier of fact could find that [the defendant there] failed to conduct a reasonable inspection," and concluding that a reasonable finder of fact could have concluded that the defendant should have known about the defect).

{¶ 22} *Beck v. Camden Place at Tuttle Crossing*, 10th Dist. No. 02AP-1370, 2004-Ohio-2989, ¶ 30 (not a Landlord Tennant Act case), is to the same effect:  "whether appellee conducted a reasonable inspection is a question for determination by the trier of fact."  *See also, e.g., Tarkany v. Bd. of Trustees of Ohio State Univ.*, 10th Dist. No. 90AP-1398, 1991 Ohio App. Lexis 2648 (June 4, 1991) ("What is reasonable under the circumstances of a given case is ordinarily a question for the trier of fact"); *Collins*, 1999 Ohio App. Lexis 2185 at * 17, 18 (reasonable minds could differ on question of constructive knowledge).  That is not a hard and fast rule, but on this record without further testimony, the question of how frequently workout room equipment such as a weightlifting bar should be assessed by a landlord (within the last day?  The last week?  The last month?  Or some other interval?) is one for the trier of fact.

{¶ 23} The question on the facts at this juncture is whether having inspected the equipment roughly two weeks before the episode was reasonable as of the time of the event so that "the landlord will be excused from liability" under the statute (assuming for summary judgment purposes that the exercise bar was missing a bolt and that that there was a sufficient causal connection between that condition and the injuries of which Mr. Malagisi complains).  *See Sikora*, 83 Ohio St.3d 493 at syllabus.  On careful consideration, that does seem to us an issue for the trier of fact and not for this court to determine by refashioning the trial court's ruling on summary judgment.   And while Marble Cliff Commons argued to the trial court that summary judgment was warranted by a factual "leap" in that "Plaintiff would like this Court to believe that a 'large bolt,' over a period of 15 days, unscrewed itself from the weight-bar that Plaintiff was using * * * and disappeared," April 19, 2019 Reply in Support of Summary Judgment at 7, Mr. Malagisi has testified that on his examination the bolt was in fact missing (as might have been seen, construing the

evidence in the light most favorable to him, by " 'look[ing] inside' the end of the weight-bar," *see* Marble Cliff Commons Appellee's Brief at 4, quoting Malagisi Deposition at 37).

{¶ 24} Finally, we are not persuaded by Marble Cliff's argument that we should uphold summary judgment on the alternative ground that Mr. Malagisi "assumed all risks associated with his use of the fitness center and the equipment located within it." *Compare* Appellee's Brief at 17-21. Marble Cliff Commons acknowledges that the apartment rules and regulations it invokes "are too vague to be enforced as a release" and that it "does not take the position that [Mr. Malagisi] released Marble Cliff Commons from liability." *Id.* at 18, 20. And even without reference to the standards of the Landlord Tenant Act, which put this matter in a different context, we could not say on this record that the "Additional Fitness Center Amenities Rules" reciting that "[r]esident(s) assume all responsibility for, and all risk of damage or injury that may occur * * * while using any of the equipment in the fitness center," and requiring residents to inspect each piece of equipment before use, would demonstrate Mr. Malagisi's "acquiescence in his appreciated and known risk" that the weightlifting bar might be missing a necessary bolt. *Compare id.* at 21 *with id.* at 19 ("doctrine is applicable as a defense where 'the risk is so obvious that plaintiff must have known and appreciated it,' " citing *Anderson v. Ceccardi*, 6 Ohio St.3d 110, 112 (1983), and "is the judicially created affirmative defense whereby a defendant owes no duty to protect a plaintiff against certain risks that are so inherent in an activity that they cannot be eliminated," citation omitted). That is, we could not say for purposes of summary judgment that the risk of a weightlifting bar being provided without a necessary bolt is "foreseeable and customary" or "inherent" to the activity (as the risk of slipping may be, for example, to the activity of hiking, *see Morgan v. Ohio Conference of the United Church of Christ*, 10th Dist. No. 11AP-405, 2012-Ohio-453, ¶ 13-15, 18 [explaining and differentiating "primary assumption of the risk" from comparative negligence]). Moreover and in any event, as the *Anderson* decision cited by Marble Cliff Commons makes clear, "in an action for personal injuries to a tenant proximately caused by a violation of a landlord's statutory duty under R.C. 5321.04, the landlord is negligent *per se* [should there be such a violation], and assumption of risk is not available as an absolute bar to a tenant's claim for recovery." 6 Ohio St.3d at 115.

{¶ 25} For the reasons outlined above, we sustain Mr. Malagisi's first assignment of error, find his second assignment of error moot, reverse the summary judgment of the Franklin County Court of Common Pleas, and remand the case to that trial court for further proceedings consistent with this opinion.

*Judgment reversed; case remanded.*

DORRIAN and BRUNNER, JJ., concur.

_____