[Cite as *Sens v. Fitness Internatl., L.L.C.*, 2023-Ohio-1004.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Michelle Sens,                                    :

          Plaintiff-Appellant,          :
                                        No. 22AP-432
v.                                                :       (C.P.C. No. 21CV-230)

Fitness International LLC et al.,                  :       (REGULAR CALENDAR)

          Defendants-Appellees.        :

---

D E C I S I O N

Rendered on March 28, 2023

---

**On brief:** *Ratliff Law Office, J.C. Ratliff, Jeff Ratliff, Rocky Ratliff, Katherine Ebraheim, Kyle Phillips*, and *Nicholas Barons*, for appellant. **Argued:** *Kyle Phillips*.

**On brief:** *Christine M. Duraney*, for appellees. **Argued:** *Christine M. Duraney*.

---

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Plaintiff-appellant, Michelle Sens, appeals from the judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendants-appellees Fitness Solutions, Ltd. ("Fitness Solutions") and Steven R. Egler (collectively referred to as "appellees"). For the following reasons, we reverse the judgment and remand the case for further proceedings.

## I. Facts and Procedural History

{¶ 2} At all times relevant to this appeal, Fitness International, LLC, d/b/a LA Fitness ("Fitness International") operated the LA Fitness Center ("LA Fitness") located on Goodale Boulevard in Columbus, Ohio. The facility housed numerous pieces of exercise

equipment, including four Stairmaster step mills[1] for use by patrons holding paid memberships.  In 2012, Fitness Solutions contracted with Fitness International to inspect and provide service, preventive maintenance, and repairs to the fitness equipment at all LA Fitness facilities in the Columbus area, including the Goodale location.

{¶ 3}   Egler was the owner and sole employee of Fitness Solutions.[2]  Generally, Egler provided weekly service at the Goodale location, spending four to six hours at the facility during each visit. During that four-to-six-hour period, he would perform inspections, provide preventive maintenance, and test the functionality and safety of the equipment.  Due to time constraints, he could not service all the equipment on every visit; accordingly, he employed a "rotational" system whereby he serviced different categories of equipment during different visits.  Egler would also check with the operations manager at LA Fitness and repair any equipment LA Fitness had taken out of service or had become disabled between visits.  Egler documented any maintenance or repair work he performed during his weekly visits.

{¶ 4}   Egler performed weekly inspections and preventive maintenance on the four step mills at the Goodale facility.  According to Egler, these weekly inspections exceeded the manufacturer's guidelines, which recommended only monthly inspections.   Egler averred that in contrast to outdated Stairmaster models with pedals that raise up and down, the step mill models have a rotating set of steps similar to an escalator.  Egler's inspection of the step mills consisted of performing an "eight steps" test on each machine to assess "all functions of the machine." (Egler Depo. at 18.)  Egler averred "[t]he eight steps is important because there's eight step shafts that have bearings on the end.  And if a bearing had come off, you're going to feel that.  It's going to kind of tilt down."  (Egler Depo. at 18.)  During the inspection, if Egler "heard something out of the ordinary, like a little bit of a crunch or a knocking or anything," he would open the cover of the step mill and inspect its internal mechanisms.  (Egler Depo. at 19.)  The internal mechanism of a step mill includes the drive chain, which is the "main chain in there that keeps resistance" on the steps.  (Egler Depo. at 22.)  According to Egler, the drive chain may become stretched or require lubrication.

---

[1] "Stairmaster" is a brand name; "step mill" is a Stairmaster model.
[2] As of the date of his deposition (October 12, 2021), Egler had "terminated" Fitness Solutions.

{¶ 5} On February 27, 2019, Egler replaced a drive chain, drive sprocket, and link on one of the step mills; however, he could not remember which one he repaired. Sometime between 12:00 and 1:00 p.m. on March 11, 2019, Egler performed his standard inspection, i.e., the eight steps test, on all four step mills. Egler concluded all were functioning properly and safely and no repairs were needed. Later that day, Egler documented his findings: "Performed PM on step mills. Make any and all necessary adjustments to ensure continued safe and proper operation." According to Egler, his notation meant he "inspected that machine and made sure it was safe and operational." (Egler Depo. at 43.) Egler testified had he discovered any problem with the drive chain on any of the step mills he would have either repaired the problem or disabled the machine.

{¶ 6} On March 12, 2019, appellant, a paid member of LA Fitness since 2017, arrived at the Goodale location sometime between 7:00 and 7:15 p.m. to perform her workout routine, which typically consisted of 30-45 minutes on a step mill followed by weight-based or other higher intensity workouts. After placing her belongings in a locker, appellant went to the area where the step mills were located. Three of the four step mills were being used by other patrons; accordingly, she approached the only available machine. According to appellant, she placed both hands on the handrails and "lifted my left foot to go on to the stair." (Sens Depo. at 11.) When she lifted her body, the stairs "spiraled down having me fall to the ground." (Sens Depo. at 11.) As she fell, she collided with another patron. Appellant immediately experienced pain in her left ankle and had difficulty walking. She did not finish her workout routine and instead drove herself home to rest what she thought was a sprained ankle. Once home, she could no longer place significant weight on her left foot and could barely walk. Appellant reported the incident to LA Fitness and sought medical attention for her injury. Several months later she had surgery on her ankle.

{¶ 7} During his weekly visit to the Goodale facility on March 19, 2019, Egler was informed by one of the employees that one of the step mills was "broken" and needed repair. (Egler Depo. at 25.) He removed the step mill's shroud cover to examine its internal mechanisms and discovered the drive chain, which provided the resistance needed to support an individual's body weight, had "come off the sprockets," which had caused the step mill to be in "failure mode." (Egler Depo. at 29, 33.) Upon examination of the drive

chain, Egler noted it was lubricated and not broken; as such, he considered simply reinstalling it. However, having been informed of the March 12, 2019 incident involving appellant, he removed the drive chain and installed a new one. Pursuant to LA Fitness policy, he sent the drive chain to LA Fitness' California facility.

{¶ 8} According to Egler, there are eight to ten possible causes for a step mill to be in failure mode, meaning its steps are not engaged. Specifically, failure mode can occur when the step mill is unplugged, the console or ribbon cable is defective, the alternator brush is worn, the alternator is defective, or the drive chain is stretched or disengaged. Because failure mode can occur in a variety of ways, a user should first confirm the steps are engaged before placing full weight onto the step mill. This test involves the user placing one foot onto a step and pushing down to confirm resistance is present while the other foot remains on the floor. According to Egler, a user employing this protocol could "[i]mmediately" discern a problem with the step mill. (Egler Depo. at 34.) He also averred step mills can malfunction due to abuse or misuse by patrons. He conceded, however, a user cannot see whether a drive chain has disengaged because it is housed inside the shroud cover. He further conceded he did not know how or when the drive chain came off the sprocket.

{¶ 9} Appellant admitted she did not test the stairs to ascertain stability prior to placing her full weight on the step mill. She acknowledged she did not know how many patrons had utilized the step mill between Egler's inspection on March 11, 2019 and her attempted use of the machine on March 12, 2019. She further conceded she did not know what Egler did during his inspection on March 11, 2019 and had no information indicating Egler was aware of the step mill's malfunction during his March 11, 2019 inspection or that he caused it to malfunction. She also acknowledged she did not know what caused the step mill to malfunction on March 12, 2019.

{¶ 10} On January 13, 2021, appellant filed a complaint seeking damages for her injuries. In Count 2 of her complaint, appellant alleged Egler, as the "outside preventive maintenance technician" who "performed all of the inspections, maintenance, and service of the Stairmasters," owed a duty to the members and patrons of LA Fitness to keep and maintain all exercise equipment in good working order. (Compl. at ¶ 29, 32.) Appellant further alleged Egler breached his duty by negligently failing to repair, keep, and maintain

the subject step mill in good working order. She further alleged as a direct result of Egler's actions, she has incurred, and will continue to incur, medical expenses for the care and treatment of her injuries. She also asserted Egler's actions caused her to suffer a loss of wages and a permanent loss of her earning capacity. Count 3 of appellant's complaint alleged Egler was working in the course and scope of his duties as owner and operator of Fitness Solutions, and, as such, Fitness Solutions was liable for Egler's negligence under the theory of respondeat superior.[3]

{¶ 11} With leave of court, appellees, on November 24, 2021, filed a motion for summary judgment. Therein, appellees argued appellant could not "satisfy the *prima facie* elements of her claim for negligence." (Mot. for Summ. Jgmt. at 1.) More specifically, appellees acknowledged Egler "owed a common-law duty to [appellant] to perform maintenance on the Stairmaster with the same degree of care an ordinarily reasonable and prudent person would exercise under the same or similar circumstances." (Mot. for Summ. Jgmt. at 7.) Appellees argued Egler "did not breach his duty to perform maintenance on the Stairmaster with the ordinarily reasonable care of a prudent person." (Mot. for Summ. Jgmt. at 7.) Specifically, appellees asserted the step mill was fully operational when Egler inspected it on March 11, 2019 and, although the chain had come off its sprocket at some point during the 18-hour period between Egler's inspection and appellant's fall, "the chain itself was well-lubricated and in good condition and there is nothing to indicate it came off its sprocket as a result of any act or failure to act by Mr. Egler." (Mot. for Summ. Jgmt. at 7.) Appellees further contended "there remains no genuine issue of material fact that Mr. Egler did not breach his duty when inspecting the Stairmaster step mill on March 11, 2019." (Mot. for Summ. Jgmt. at 7.) Appellees further argued because Egler did not act negligently, "no vicarious liability flows through to Fitness Solutions." (Mot. for Summ. Jgmt. at 8.) In support of their motion, appellees submitted the depositions of appellant and Egler.

---

[3] Appellant asserted in Count 1 of her complaint a negligence action against Fitness International. Fitness International filed a motion for summary judgment. The trial court granted that motion and entered judgment for Fitness International. Appellant subsequently filed a motion for reconsideration of that decision, which the trial court denied. On September 6, 2022, Fitness International filed in this court a motion seeking an order confirming that it was not a party to the appeal filed by Fitness Solutions and Egler. In a journal entry issued September 21, 2022, this court construed Fitness International's pleading as a motion to remove it as a party-appellee from the present appeal and granted the motion.

{¶ 12} On December 22, 2021, appellant filed a memorandum opposing appellees' motion for summary judgment, supported by her own deposition and that of Egler. Therein, appellant first noted the parties' acknowledgement that appellees owed a common-law duty to appellant to perform the preventive maintenance on the step mill with the same degree of care as an ordinary, reasonable and prudent person would exercise under the same or similar circumstances. Appellant argued Egler breached his duty by failing to exercise due care in inspecting the step mill on March 11, 2019.

{¶ 13} More specifically, appellant maintained Egler's standard inspection, consisting only of performing one full rotation of the eight step shafts during which he listened for a sound or sign that would indicate problems with the functionality of the machine, was insufficient to identify the condition causing appellant's injury, i.e., the drive chain becoming disengaged. Appellant argued proper inspection would involve removing the step mill's shroud cover and inspecting the drive chain to observe its functionality, lubrication status, or whether it had been stretched. Appellant argued without visual or other physical inspection of the drive chain, Egler relied on nothing more than listening for a sound to indicate functionality problems. Appellant maintained other patrons using exercise equipment within the facility would likely generate noise or other sounds hindering Egler's ability to audibly detect any functional issue with the drive chain. Accordingly, argued appellant, a genuine issue of material fact remains as to whether Egler's inspection on March 11, 2019 was deficient under the circumstances and thereby constituted a breach of his duty of care. Appellant further argued Egler's breach of duty proximately caused her injuries.

{¶ 14} On December 29, 2021, appellees filed a reply in support of their motion for summary judgment. Appellees asserted:

> [Appellant] failed to produce any evidence that improper maintenance caused this Stairmaster step mill to go into [failure mode]. There is simply nothing to indicate the drive chain came off its sprocket as a result of improper maintenance.
>
> Instead, [appellant] merely speculates the preventative maintenance Mr. Egler performed may have been insufficient. However, in order to defeat summary judgment, [appellant] was required to produce evidence that improper maintenance caused this particular failure; only then would a question of

fact exist as to whether Mr. Egler performed that preventative maintenance with the requisite duty of reasonable care. Without any evidence that lack of proper maintenance caused this drive chain to disengage, [appellant's] speculation is as irrelevant as it is inappropriate.

(Reply in Support of Mot. for Summ. Jgmt. at 4.)

{¶ 15} In granting appellees' motion for summary judgment, the trial court stated:

[Appellees] argue that Egler did not breach his duty to perform maintenance on the subject Stairmaster, and there is no evidence to indicate that the chain came off the sprocket on the machine due to any act or failure to act by Egler. Upon review of all the evidence before the Court, and construing such evidence most strongly in favor of [appellant], the non-moving party, the Court finds that [appellant] cannot establish that Egler breached his duty to [appellant]. Thus, [appellant's] claim fails as a matter of law.

Because a claim for *respondeat superior* is a derivative claim, [appellant's] claim against Fitness Solutions likewise fails.

(June 21, 2022 Decision & Entry at 3.)

## II. Assignment of Error

{¶ 16} Appellant appeals and assigns the following sole assignment of error for our review:

THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFF-APPELLANT * * * WHEN IT GRANTED DEFENDANT-APPELLEE FITNESS SOLUTIONS, LTD AND STEVEN EGLER'S MOTION FOR SUMMARY JUDGMENT.

## III. Analysis

{¶ 17} Appellant's sole assignment of error contends the trial court erred in granting summary judgment in favor of appellees on her negligence and respondeat superior claims.

{¶ 18} We review a decision on a motion for summary judgment under a de novo standard. *LRC Realty, Inc. v. B.E.B. Properties*, 160 Ohio St.3d 218, 2020-Ohio-3196, ¶ 11. De novo appellate review means the court of appeals conducts an independent review, without deference to the trial court's decision. *Wiltshire Capital Partners v. Reflections II, Inc.*, 10th Dist. No. 19AP-415, 2020-Ohio-3468, ¶ 12. Summary judgment is appropriate only when the moving party demonstrates: (1) no genuine issue of material fact exists,

(2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 193 (1997). In ruling on a motion for summary judgment, the court must resolve all doubts and construe the evidence in favor of the non-moving party. *Premiere Radio Networks, Inc. v. Sandblast L.P.*, 10th Dist. No. 18AP-736, 2019-Ohio-4015, ¶ 6.

{¶ 19} Pursuant to Civ.R. 56(C), the party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The moving party cannot satisfy this initial burden by simply making conclusory assertions, but instead must demonstrate, including by use of affidavit or other evidence allowed by Civ.R. 56(C), that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Wiltshire Capital* at ¶ 13. If the moving party fails to satisfy this initial burden, the court must deny the motion for summary judgment; however, if the moving party satisfies the initial burden, the non-moving party has a burden to respond, by affidavit or otherwise as provided under Civ.R. 56, with specific facts demonstrating a genuine issue exists for trial. *Dresher* at 293; *Hall v. Ohio State Univ. College of Humanities*, 10th Dist. No. 11AP-1068, 2012-Ohio-5036, ¶ 12, citing *Henkle v. Henkle*, 75 Ohio App.3d 732, 735 (12th Dist.1991).

{¶ 20} "[I]n order to establish actionable negligence, one seeking recovery must show the existence of a duty, the breach of the duty, and injury resulting proximately therefrom." *Strother v. Hutchinson*, 67 Ohio St.2d 282, 285 (1981). The plaintiff bears the burden of establishing each of these elements by a preponderance of the evidence. *Id.*

{¶ 21} We begin our analysis by determining whether appellees owed appellant any duty. "Duty refers to the relationship between the plaintiff and the defendant from which arises defendant's obligation to exercise due care toward the plaintiff." *Rundio v. Dublin Senior Community Ltd. Partnership*, 10th Dist. No. 06AP-489, 2006-Ohio-6780, ¶ 8. Absent a duty, no legal liability for negligence can arise. *Smallwood v. MCL, Inc.*, 10th Dist. No. 14AP-664, 2015-Ohio-1235, ¶ 7. Generally, the existence of a duty depends upon the foreseeability of injury to someone in the plaintiff's position. *Simmers v. Bentley Constr.*

*Co.*, 64 Ohio St.3d 642, 645 (1992); *Smallwood* at ¶ 8, citing *Cromer v. Children's Hosp. Med. Ctr. of Akron*, 142 Ohio St.3d 257, 2015-Ohio-229, ¶ 24. "Injury is foreseeable if a reasonably prudent person would have anticipated that injury was likely to result from the performance or nonperformance of an act." *Id.*, citing *Estates of Morgan v. Fairfield Family Counseling Ctr.*, 77 Ohio St.3d 284, 293 (1997). The existence of a duty is a question of law for the court to determine. *Mussivand v. David*, 45 Ohio St.3d 314, 318 (1989).

**{¶ 22}** In this case, appellees owed appellant a duty of ordinary care pursuant to its contract with Fitness International. In *Durham v. Warner Elevator Mfg. Co.*, 166 Ohio St. 31 (1956), the Supreme Court of Ohio held a company who has contracted to service and examine the mechanical equipment of another owes a duty of ordinary care in the performance of its obligations to persons lawfully using the equipment. The court stated:

> Where one, under a written contract, undertakes to service and examine the mechanical equipment of another and make a report on the condition thereof, and the equipment is of such a nature as to make it reasonably certain that life and limb will be endangered if such work is negligently performed, he is chargeable with the duty of performing the work in a reasonably proper and efficient manner, and if such duty is negligently or carelessly performed whereby injury occurs to a blameless person, not a party to the contract and lawfully using such equipment, such injured person has a right of action directly against the offending contractor. Liability in such instance is not based upon any contractual relation between the person injured and the offending contractor, but upon the failure of such contractor to exercise due care in the performance of the assumed obligations.

*Id.* at paragraph two of the syllabus.

**{¶ 23}** From the summary judgment materials presented here, it seems clear appellant was the type of person to whom a duty would be owed under the *Durham* rule, i.e., "a blameless person, not a party to the contract and lawfully using such equipment." *Id.* Thus, we conclude under the rule announced in *Durham*, appellees, as a matter of law, owed appellant a duty to exercise due care in the performance of its contractual obligation to Fitness International to inspect, service, and repair the fitness equipment including the four Stairmaster step mills.

**{¶ 24}** As noted above, appellees did not contest the duty element of appellant's claim. Rather, appellees argued in their motion for summary judgment appellant failed to

establish a breach of the duty of ordinary care. Appellees maintained both "there is nothing to indicate [the drive chain] came off its sprocket as a result of any act or failure to act by Mr. Egler" and that "there remains no genuine issue of material fact that Mr. Egler did not breach his duty when inspecting the Stairmaster step mill." (Mot. for Summ. Jgmt. at 7.) The trial court adopted nearly verbatim appellees' first assertion: "there is no evidence to indicate that the chain came off the sprocket on the machine due to any act or failure to act by Egler." (June 21, 2022 Decision & Entry at 3.) However, the trial court did not address the inspection issue.

{¶ 25} Appellant does not challenge the trial court's conclusion as to the absence of evidence indicating the step mill's drive chain came off the sprocket as a result of Egler's action or inaction. Indeed, appellant states she "does not purport that Mr. Egler negligently caused or perform[ed] some act that caused the drive chain to come off its sprockets." (Appellant's Brief at 18.) Rather, appellant maintains "the question on the facts at this juncture is whether Mr. Egler's failure to employ adequate maintenance inspections on the subject Stairmaster was negligent." (Appellant's Brief at 14-15.) Appellant contends the trial court should have considered whether Egler's inspection, which only involved performing one full rotation of the steps while listening for unusual sounds, was reasonable under the circumstances.[4]

{¶ 26} "Questions not addressed by the trial court generally will not be ruled on by the appellate court." *You v. N.E. Ohio Med. Univ.*, 10th Dist. No. 19AP-733, 2020-Ohio-4661, ¶ 30, citing *Peterson v. Martyn*, 10th Dist. No. 17AP-39, 2018-Ohio-2905, ¶ 51, citing *Ochsmann v. Great Am. Ins. Co.*, 10th Dist. No. 02AP-1265, 2003-Ohio-4679, ¶ 21, citing *Mills-Jennings of Ohio, Inc. v. Dept. of Liquor Control*, 70 Ohio St.2d 95, 99 (1982) (refusing to address on appeal issues raised in the party's motion for summary judgment not considered by the trial court). " 'While it is true that an appellate court reviews a trial

---

[4] At oral argument on February 7, 2023, appellant cited to this court's decision in *Malagisi v. Marble Cliff Crossing Apts., L.L.C.*, 10th Dist. No. 19AP-475, 2020-Ohio-1034. Appellant acknowledged *Malagisi* was not cited in her briefing. This court directed appellant to file *Malagisi* as supplemental authority. Appellees then requested permission to file a supplemental brief in response to appellant's filing of supplemental authority. We advised appellees to file a formal request to that effect, which we would consider at the time of filing. Following oral argument, appellant filed *Malagisi* as supplemental authority. On February 15, 2023, appellees filed a motion seeking leave to file a brief, instanter, addressing appellant's supplemental authority, along with said brief. By journal entry filed February 21, 2023, this court granted that motion. In the same entry, we afforded appellant three days to file a reply brief. Later on February 21, 2023, appellees filed a supplemental brief addressing *Malagisi*. Appellant filed a reply brief on February 23, 2023.

court's summary judgment decision de novo, [an appellate court must] not consider issues raised in summary judgment proceedings that the trial court failed to rule on.' " *Peterson* at ¶ 51, quoting *Tree of Life Church, FWC v. Agnew*, 7th Dist. No. 12 BE 42, 2014-Ohio-878, ¶ 27, citing *Conny Farms, Ltd. v. Bell Resources, Inc.*, 7th Dist. No. 09 CO 36, 2011-Ohio-5472, ¶ 15. " '[E]ven though' an appellate court reviewing an award of summary judgment 'must conduct its own examination of the record,' if the 'trial court does not consider all the evidence before it, an appellate court does not sit as a reviewing court, but, in effect, becomes a trial court,' and accordingly the failure of the 'trial court to thoroughly examine all appropriate materials filed by the parties before ruling on a motion for summary judgment * * * constitutes reversible error.' " *Id.*, quoting *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 360 (1992). *See also Wellman v. Salt Creek Valley Bank*, 10th Dist. No. 06AP-177, 2006-Ohio-4718, ¶ 11 (remanding the case for the trial court to consider other grounds raised in the motion to dismiss not previously addressed).

{¶ 27} Here, the issue of whether Egler breached his duty by failing to perform a reasonable inspection of the step mill was presented in appellees' motion for summary judgment. The trial court, however, failed to address the issue in its decision and exclusively relied on its determination that Egler did not cause the drive chain to disengage by any act or failure to act. Accordingly, as the trial court failed to rule on this issue, it is not properly before us at this time. *Peterson* at ¶ 52.

## IV. Conclusion

{¶ 28} Having declined to address appellant's sole assignment of error, we reverse the judgment of the Franklin County Court of Common Pleas and remand the case to that court for further proceedings consistent with law and this decision.

*Judgment reversed and cause remanded.*

JAMISON and BOGGS, JJ., concur.

—————————————