OPINION
{¶ 1} Plaintiff-appellant, Marie G. Kleisch, appeals from a judgment of the Court of Claims of Ohio in favor of defendant-appellee, Cleveland State University ("university" or "CSU"). For the following reasons, we affirm the judgment of the Court of Claims.
 {¶ 2} At approximately 9 a.m. in the morning on August 3, 2001, a stranger attacked and raped plaintiff, who at that time was a CSU student and was studying in a university lecture hall for a final examination that was to be held there approximately one hour later that same day. Thereafter, in July 2003, alleging four causes of action and seeking declaratory relief and monetary damages, plaintiff sued the university, university police, and the university's chief of police in both his official and individual capacity.[1] In her complaint, plaintiff claimed, among other things, that: (1) the university's chief of police acted with malice, in bad faith, or in a wanton or reckless manner and, consequently he was not entitled to civil immunity under R.C. 9.86 and 2743.02(F);[2] (2) the university and university police were negligent under the common law and under the doctrine of res ipsa loquitur; and (3) the university and university police violated R.C. 4101.11, thereby breaching a duty of care toward plaintiff.
 {¶ 3} After a bench trial wherein the issues of liability and damages were bifurcated, the trial court found that the university's chief of police was entitled to civil immunity and the trial court also rendered judgment in favor of the university. From the trial court's judgment, plaintiff now appeals. In this appeal, plaintiff does not challenge the trial court's determination that the university's chief of police was entitled to civil immunity under R.C. 9.86 and former 2743.02(F).
 {¶ 4} Plaintiff assigns a single error for our consideration:
THE TRIAL COURT ERRED AS A MATTER OF LAW BY FINDING THAT A RAPE OF A STATE COLLEGE STUDENT IN A CLASSROOM DURING BUSINESS HOURS WAS NOT FORESEEABLE AND BY FINDING THAT APPELLANT FAILED TO PROVE ANY DUTY OWED TO HER THAT PROXIMATELY CAUSED HER INJURY.
 {¶ 5} By her complaint, plaintiff asserted four causes of action: (1) declaratory judgment seeking a declaration that the university's chief of police was not entitled to immunity under R.C. 9.86 and 2743.02, (2) negligence against the university and the university police department, (3) breach of R.C. 4101.11 by the university and university police department, and (4) res ipsa loquitur.
 {¶ 6} "The doctrine of res ipsa loquitur is not a substantive rule of law furnishing an independent ground for recovery; rather, it is an evidentiary rule which permits, but does not require, the jury to draw an inference of negligence when the logical premises for the inference are demonstrated." JenningsBuick, Inc. v. Cincinnati (1980), 63 Ohio St.2d 167, 169. Because the doctrine of res ipsa loquitur is an evidentiary rule and not a substantive rule of law furnishing an independent ground for recovery, id. at 169, it cannot constitute a legally cognizable basis for a claim. Therefore, to the extent plaintiff contends that the trial court erred by not finding in her favor as to this cause of action, such a contention is not well-taken. Furthermore, because the doctrine of res ipsa loquitur is an evidentiary rule that permits, but does not require, the trier of fact to draw an inference of negligence, we conclude the issue raised by plaintiff's fourth cause of action is incorporated within plaintiff's claim of negligence.[3] See id. at 170 (stating that "[t]he doctrine of res ipsa loquitur does not alter the nature of plaintiff's claim in a negligence action; it is merely a method of proving the defendant's negligence through the use of circumstantial evidence").
 {¶ 7} Plaintiff's third cause of action seeks relief under R.C. 4101.11.[4] R.C. 4101.11 is commonly referred to as the "frequenter statute." Eicher v. United States Steel Corp.
(1987), 32 Ohio St.3d 248, 249. Under R.C. 4101.11, the duty owed to frequenters "is no more than a codification of the common-law duty owed by an owner or occupier of premises to invitees, requiring that the premises be kept in a reasonably safe condition, and that warning be given of dangers of which he has knowledge." Eicher, at 249. Accordingly, we conclude that the issue raised by plaintiff's third cause of action also is incorporated within plaintiff's claim of negligence.
 {¶ 8} "[T]o recover on a negligence claim, a plaintiff must prove (1) that the defendant owed the plaintiff a duty, (2) that the defendant breached that duty, and (3) that the breach of the duty proximately caused the plaintiff's injury." Chambers v. St.Mary's School (1998), 82 Ohio St.3d 563, 565, reconsideration denied, 83 Ohio St.3d 1453, citing Wellman v. E. Ohio Gas Co.
(1953), 160 Ohio St. 103, 108-109; Sedar v. Knowlton Constr.Co. (1990), 49 Ohio St.3d 193, 198, overruled on other grounds,Brennaman v. R.M.I. Co. (1994), 70 Ohio St.3d 460.
 {¶ 9} "`Duty, as used in Ohio tort law, refers to the relationship between the plaintiff and the defendant from which arises an obligation on the part of the defendant to exercise due care toward the plaintiff.'" Wallace v. Ohio Dept. of Commerce,Div. of State Fire Marshal, 96 Ohio St.3d 266, 2002-Ohio-4210, at ¶ 23, quoting Commerce Industry Ins. Co. v. Toledo (1989),45 Ohio St.3d 96, 98. Whether a duty exists in a negligence action is a question of law for a court to determine. Mussivandv. David (1989), 45 Ohio St.3d 314, 318; Wallace, at ¶ 22.[5]
 {¶ 10} "[T]he duty element of negligence may be established by common law, by legislative enactment, or by the particular circumstances of a given case." Wallace, at ¶ 23, citingChambers, supra, at 565; Eisenhuth v. Moneyhon (1954),161 Ohio St. 367, paragraph one of the syllabus. The existence of a duty depends on foreseeability of harm. Menifee v. Ohio WeldingProducts, Inc. (1984), 15 Ohio St.3d 75, 77; Wallace, at ¶ 23. "The test for foreseeability is whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act." Menifee, at 77; see, also, Wallace, at ¶ 23. Foreseeability of harm usually depends on a defendant's knowledge. Menifee, at 77.
 {¶ 11} Under Ohio common law of premises liability, the status of the person who enters upon the land of another, specifically, trespasser, licensee, or invitee, defines the scope of the legal duty that a landowner owes the entrant. Gladon v.Greater Cleveland Regional Transit Auth. (1996),75 Ohio St.3d 312, 315, reconsideration denied, 75 Ohio St.3d 1452, citingShump v. First Continental-Robinwood Assoc. (1994),71 Ohio St.3d 414, 417.
 {¶ 12} "A trespasser is one who, without express or implied authorization, invitation or inducement, enters private premises purely for his own purposes or convenience." McKinney v. Hartz Restle Realtors, Inc. (1987), 31 Ohio St.3d 244, 246. By comparison, "[i]nvitees are persons who rightfully come upon the premises of another by invitation, express or implied, for some purpose which is beneficial to the owner," Gladon, at 315, citing Light v. Ohio Univ. (1986), 28 Ohio St.3d 66, 68;Schiebel v. Lipton (1951), 156 Ohio St. 308, paragraph one of the syllabus, whereas "a licensee is one who enters upon the premises of another, by permission or acquiescence and not by invitation, for his own benefit or convenience." Quinn v.Montgomery Cty. Educational Serv. Ctr., Montgomery App. No. 20596, 2005-Ohio-808, at ¶ 12, citing Light, supra, at 68;Richardson v. Novak (Nov. 3, 1993), Montgomery App. No. 13947.
 {¶ 13} Here, plaintiff was a CSU student at the time of the rape and was studying in a classroom on the CSU campus in preparation for a final examination that was to be held there later in the morning. We therefore conclude that plaintiff's presence on university property afforded her the status of an invitee, Baldauf v. Kent State Univ. (1988), 49 Ohio App.3d 46,47, and, as a consequence, the university owed plaintiff a duty "`to exercise ordinary care and to protect [her] by maintaining the premises in a safe condition.'" Bennett v. Stanley (2001),92 Ohio St.3d 35, 38, quoting Light, supra, at 68; see, also,Baldauf, at 47-48, and Richmond v. Ohio State Univ. (Ct.Cl. 1989), 56 Ohio Misc.2d 16, 17 (observing that "[i]n view of the fact that a student pays a fee to a university for educational instruction, the institution (defendant) owes the duty of exercising ordinary and reasonable care as to the student's safety").
 {¶ 14} By her sole assignment of error, plaintiff suggests, among other things, that the trial court found that the university did not owe any duty toward plaintiff.[6] Rather than finding an absence of duty, the trial court in fact found that plaintiff failed to prove that defendant breached any duty owed to plaintiff. In its decision, the trial court stated: "The court * * * finds that plaintiff failed to prove that defendant breached any duty owed to her that proximately caused her injury." (Feb. 22, 2005 Decision, at 6.) Thus, to the extent that plaintiff contends that the trial court found that the university owed no duty of care toward plaintiff, such a contention is not supported by the plain language of the trial court's judgment.
 {¶ 15} "An occupier of premises for business purposes may be subject to liability for harm caused to a business invitee by the conduct of third persons that endangers the safety of such invitee, just as an occupier may be subject to liability for harm caused to such invitee by any dangerous condition of those premises." Howard v. Rogers (1969), 19 Ohio St.2d 42, paragraph one of the syllabus.
 {¶ 16} In Simpson v. Big Bear Stores Co. (Dec. 30, 1993), Franklin App. No. 93AP-852, affirmed (1995), 73 Ohio St.3d 130, this court explained:
* * * Under Ohio law, ordinarily no duty exists to prevent a third person from harming another unless a "special relationship" exists between the actor and the other. Gelbman v. Second Natl.Bank of Warren (1984), 9 Ohio St.3d 77 (adopting 2 Restatement of the Law 2d, Torts (1965) 122, Section 315(b)). Such a "special relationship" exists between a business and its business invitees. Reitz v. May Co. Dept. Stores (1990),66 Ohio App.3d 188; see, also, Restatement, supra, at 118, Section 314(A); Restatement, supra, at 123, Section 315, Comment c. Thus, a business may be subject to liability for harm caused to a business invitee by the criminal conduct of third persons.Rogers, supra; Taylor v. Dixon (1982), 8 Ohio App.3d 161; see Restatement, supra, at 223-226, Section 344. Nonetheless, a business is not an insurer of the safety of its business invitees while they are on its premises. Rogers, supra, at paragraph two of the syllabus. Consequently, a business has a duty to warn or protect its business invitees from criminal acts of third persons only where the business knows or should know in the exercise of ordinary care that such acts present a danger to its business invitees. Rogers, supra, at paragraph three of the syllabus;Reitz, supra, at 191.
Id.
 {¶ 17} Applying Simpson, the inquiry here is whether plaintiff's rape was reasonably foreseeable and whether the university breached a duty of ordinary care by failing to take measures to protect plaintiff from being attacked and raped by a stranger.
 {¶ 18} Ordinarily, whether a defendant properly discharged a duty of care and whether a breach of a duty of care proximately caused plaintiff's injuries are questions for the trier of fact.Commerce Industry Ins. Co., supra, at 98; Engle v. SalisburyTwp., Meigs App. No. 03CA11, 2004-Ohio-2029, at ¶ 27; Stewartv. Ohio Dept. of Rehab. Corr., Franklin App. No. 02AP-816, 2003-Ohio-588, at ¶ 9.
 {¶ 19} In this appeal, although not expressly claiming that the trial court's judgment is against the manifest weight of the evidence, we find that plaintiff's argument advances such a claim. As to civil judgments, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v.Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus. When considering whether a judgment is against the manifest weight of the evidence, an appellate court is guided by a presumption that the findings of the trier of fact were correct. Seasons Coal Co.v. Cleveland (1984), 10 Ohio St.3d 77, 79-80. "[A]n appellate court should not substitute its judgment for that of the trial court when there exists * * * competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial judge." Id. at 80.
 {¶ 20} Here, the trial court concluded that "[a]fter careful consideration of all the testimony and other evidence presented, the court finds that it was not foreseeable that plaintiff would be raped in a classroom on a weekday morning when final examinations were going to be held." (Decision, at 5.)
 {¶ 21} Relying heavily upon plaintiff's expert's opinion,[7] plaintiff contends that her rape was foreseeable for the following reasons: (1) the university police department is undermanned as there are only approximately three to five officers on duty during each shift, and these officers must patrol a campus that is located in a high-risk crime area[8] and that spans approximately 85 acres and approximately 38 buildings; (2) under such circumstances, a deployment of approximately three to five officers per shift cannot adequately secure campus buildings; (3) because a deployment of approximately three to five officers per shift cannot adequately secure the campus, university classrooms should be locked when classes are not in session; (4) classrooms at the university had existing hardware that allowed classrooms to be locked when they were not in use; (5) although classrooms were able to be locked, the university failed to lock classrooms when they were not in use and failed to have a policy requiring classrooms to be locked when they were not in use; (6) due to the classroom's design and construction, the unlocked classroom where the rape occurred was isolated and nearly soundproof and, therefore, more susceptible to criminal activity; (6) although university police locked exterior doors at night after classes ended, interior rooms were not searched and, therefore, potential intruders could remain in university buildings undetected after classes ended; and (7) the amount of violent crime at the university purportedly was underreported, was not consistent with the requirements of the Clery Act,[9] and this purported underreporting conveyed a false sense of security to students and prospective students.
 {¶ 22} Relying upon its own expert witness,[10] the university disputes plaintiff's contention that plaintiff's rape was foreseeable. According to the university, prior to plaintiff's rape, the last rape at the campus occurred approximately 16 months earlier at a separate but connected building from where plaintiff was raped. Moreover, the university contends that the circumstances of the earlier rape differed from the rape at issue. For example, in the previous rape, a rapist attacked a woman in a women's restroom; here, plaintiff's attacker assaulted plaintiff in a classroom, which is a more open environment than a restroom. The university also asserts that the manner in which its police personnel are allocated and the university police's procedures are discretionary and, therefore, decisions concerning the allocation of university police personnel and procedures of the university police are protected by discretionary immunity. See, e.g., Reynolds v. State, Div. ofParole Community Services (1984), 14 Ohio St.3d 68, 70
(construing a former version of R.C. 2743.02 to mean "that the state cannot be sued for its legislative or judicial functions or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion").
 {¶ 23} "Ohio courts are split on the appropriate test for foreseeability." Whisman v. Gator Invest. Properties, Inc.,149 Ohio App.3d 225, 2002-Ohio-1850, at ¶ 24, citing Heys v.Blevins (June 13, 1997), Montgomery App. No. 16291. As theWhisman court explained: "The totality-of-the-circumstances test takes into consideration not only past experiences but also `such factors as the location of the business and the character of the business to determine whether the danger was foreseeable.'" Id. at ¶ 24, quoting Heys, citingReitz v. May Co. Dept. Stores (1990),66 Ohio App.3d 188, 193, jurisdictional motion overruled, 52 Ohio St.3d 704. "Under this test, the totality of the circumstances must be `somewhat overwhelming' to result in a duty to protect third parties against criminal acts of others." Whisman, at ¶ 24, quoting Reitz, at 193-194. However, "[u]nder the other test, `the occurrence of prior similar acts suggests that the danger was foreseeable.'" Whisman, at ¶ 25, citing Heys. See, also, McKee v. Gilg
(1994), 96 Ohio App.3d 764, 767 (wherein this court discussed "totality of the circumstances" and "prior similar acts" tests of foreseeability); Haralson v. Banc One Corp. (Apr. 16, 1998), Franklin App. No. 97APE08-1134, appeal not allowed,83 Ohio St.3d 1419 (discussing "totality of the circumstances" and "prior similar acts" tests of foreseeability).[11]
 {¶ 24} In Reitz, the Eighth District Court of Appeals explained:
In addition to the totality of the circumstances presented, a court must be mindful of two other factors when evaluating whether a duty is owed * * *. The first is that a business is not an absolute insurer of the safety of its customers. The second is that criminal behavior of third persons is not predictable to any particular degree of certainty. It would be unreasonable, therefore, to hold a party liable for acts that are for the most part unforeseeable. Thus, the totality of the circumstances must be somewhat overwhelming before a business will be held to be on notice of and therefore under the duty to protect against the criminal acts of others.
Id. at 193-194. See, also, Hetrick v. Marion-Reserve PowerCo. (1943), 141 Ohio St. 347, 358-359 (discussing negligence and the doctrine of reasonable anticipation).[12]
 {¶ 25} Here, the evidence suggests that in the four or five years prior to plaintiff's rape, only one rape occurred on the university campus, and this rape occurred in a restroom in a building adjacent to the building where plaintiff was raped approximately one year and four months prior to plaintiff's rape. (Tr. 101, 250; Baeppler Depo., at 32, 66.)
 {¶ 26} Recognizing that the university was not an absolute insurer of plaintiff's safety and that criminal behavior by third persons is not predictable to any particular degree of certainty, see Reitz, supra, we cannot conclude that a rape at CSU nearly one and one-half years before plaintiff's rape is sufficient as a matter of law to give the university reason to know that plaintiff likely would be raped in a classroom while she studied at 9 a.m. in the morning for a final examination. We therefore cannot conclude in this case that the totality of the circumstances is somewhat overwhelming such that the requisite foreseeability was established to hold the university liable for breaching a duty of care toward plaintiff.
 {¶ 27} Furthermore, we cannot conclude that the trial court's judgment was against the manifest weight of the evidence. When questioned whether, from a security standpoint, the occurrence of a rape approximately one and one-half years before plaintiff's rape mandated a change in university security policy, defendant's expert witness testified:
I think it could, but not necessarily.
* * *
* * * I think it depends on the circumstances of the event. As I recall, the previous rape had occurred in a restroom in an adjacent building. This occurred in a classroom facility, which was typically an open environment.
(Tr. 251.) The university's expert witness also testified, as follows:
Q. [By Assistant Attorney General Tracy M. Greuel] Okay. Is there anything unique about the crime of rape in general that mandates special security concerns, or is there anything special that can be done to prevent it?
A. Well, that's kind of an open question. But the answer is there are — there certainly are things that can be done to prevent rape, but not always. Not every crime is preventable. In the case of rape, part of the solution is to be aware of these situations when they come up and to have — when the opportunity exists, to have police involved and extra patrols and so forth, if there's something to look for, a suspect to be had. But more importantly, to disseminate the information to students and staff so that people are aware that this has occurred, and these are the things that one should watch out for, and these are the steps that one might take to prevent that — or to avoid from being put in that situation.
(Tr. 251-252.)
 {¶ 28} Defendant's expert further testified that the university's crime prevention program was viable. (Tr. 264.) Defendant's expert testified:
* * * I thought they presented the information that the police department needs to present to its students, faculty, staff, and visitors. I thought it was easy to get the information. I liked the fact that they had a program for new students and that they require new students to attend that program. So I thought they did a good job in disseminating that information to their population.
(Tr. 264-265.)
 {¶ 29} Ultimately, defendant's expert witness opined to a reasonable degree of professional certainty that the university complied with requirements under the Clery Act and that it had acceptable standards and best practices in place at the time of plaintiff's rape. (Tr. 271.)
 {¶ 30} We find defendant's expert's testimony, if believed by the trial court, as the trier of fact, constitutes some competent, credible evidence to support the trial court's judgment that defendant did not breach any duty of care toward plaintiff, notwithstanding the trial court's view that plaintiff was a victim and a very believable witness. (Tr. 165.)
 {¶ 31} Accordingly, for the foregoing reasons, we overrule plaintiff's sole assignment of error and affirm the judgment of the Court of Claims of Ohio.
Judgment affirmed.
Klatt, P.J., and Bryant, J., concur.
[1] Plaintiff asserted in paragraph two of the complaint that she also was suing the university president in both an official and an individual capacity. However, plaintiff failed to identify the university president as a defendant in the complaint's caption and also failed to assert any causes of action against the university president. Moreover, there is no evidence that a complaint and summons were served upon the university president. Accordingly, under these facts and circumstances, we conclude that the university president was not a proper defendant in this action. See Vance v. Davis (1923), 107 Ohio St. 577, syllabus (holding that "[t]he parties to a cause are not determined solely by the caption in that cause, but from the entire record").
By a July 31, 2003 prescreening entry that was entered shortly after plaintiff's complaint was filed, the trial court dismissed the university police chief as a defendant in this action. See, generally, Loc.R. 15(B) of the Court of Claims of Ohio.
In its prescreening entry, the trial court also deleted the university police from the case caption as surplusage. We construe the trial court's action as a dismissal of the university police as a defendant. The record that shows that: (1) the university police were not served with the complaint and issued a summons, (2) the university police did not file an answer, and (3) plaintiff did not move for default judgment against the university police, supports such a construal.
[2] (2005) Sub.H.B. No 25 amended R.C. 2743.02(F), effective November 3, 2005, by adding the following sentence to the first paragraph: "The officer or employee may participate in the immunity determination proceeding before the court of claims to determine whether the officer or employee is entitled to personal immunity under section 9.86 of the Revised Code." This change to R.C. 2743.02(F) became effective after the trial court rendered judgment in this case.
[3] In Hake v. George Wiedemann Brewing Co. (1970),23 Ohio St.2d 65, the Supreme Court of Ohio instructed:
To warrant application of [the doctrine of res ipsa loquitur] a plaintiff must adduce evidence in support of two conclusions: (1) That the instrumentality causing the injury was, at the time of the injury, or at the time of the creation of the condition causing the injury, under the exclusive management and control of the defendant; and (2) that the injury occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed. * * *
Id. at 66-67; see, also, Jennings Buick, Inc., supra, at 170.
Whether sufficient evidence was adduced at trial to warrant application of the doctrine of res ipsa loquitur is a question of law for the trial court and subject to review upon appeal.Hake, at 67.
[4] R.C. 4101.11 provides:
Every employer shall furnish employment which is safe for the employees engaged therein shall furnish a place of employment which shall be safe for the employees therein and for frequenters thereof, shall furnish and use safety devices and safeguards, shall adopt and use methods and processes, follow and obey orders, and prescribe hours of labor reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters.
[5] The concept of duty in negligence law is at times elusive.Wallace, at ¶ 23. In Mussivand, supra, the Supreme Court of Ohio explained:
There is no formula for ascertaining whether a duty exists. Duty "* * * is the court's `expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' (Prosser, Law of Torts (4th ed. 1971) pp. 325-326.) Any number of considerations may justify the imposition of duty in particular circumstances, including the guidance of history, our continually refined concepts of morals and justice, the convenience of the rule, and social judgment as to where the loss should fall. (Prosser,Palsgraf Revisted (1953), 52 Mich.L.Rev. 1, 15)." * * *
Id. at 318, quoting Weirum v. RKO General, Inc. (1975),15 Cal. 3d 40, 46, 123 Cal. Rptr. 468, 471, 539 P. 2d 36, 39; see, also, Wallace, supra, at ¶ 24.
[6] Plaintiff's assignment of error asserts, in relevant part: "THE TRIAL COURT ERRED AS A MATTER OF LAW BY * * * FINDING THAT APPELLANT FAILED TO PROVE ANY DUTY OWED TO HER THAT PROXIMATELY CAUSED HER INJURY."
[7] At trial, plaintiff's expert witness's testimony was presented by videotaped deposition. Before playing the videotaped deposition in court, the trial court did not expressly qualify the deponent as an expert witness and defendant did not to object to deponent's qualifications as an expert. See, generally, Scottv. Yates (1994), 71 Ohio St.3d 219, 221 (observing that while Evid.R. 702 permits expert testimony, "a threshold determination must first be made under Evid.R 104(A) concerning the qualifications of the witness to testify"); id. at 221, citingAlexander v. Mt. Carmel Med. Ctr. (1978), 56 Ohio St.2d 155,157 (stating that "[a] ruling concerning the admission of expert testimony is within the broad discretion of the trial court and will not be disturbed absent an abuse of discretion"). See, also,Goldfuss v. Davidson (1997), 79 Ohio St.3d 116, 121
(recognizing that a party's failure to advise a trial court of possible error waives the issue for purposes of appeal).
After the videotaped deposition was played at trial, the trial court later commented that it earlier allowed deponent's testimony as expert testimony. (Tr. 96.) Under these facts and circumstances, we conclude that the trial court impliedly found plaintiff's witness to be qualified as an expert prior to the introduction of the videotaped testimony at trial. Furthermore, based upon our review of the evidence, we cannot conclude that the trial court abused its discretion by admitting the videotaped testimony into evidence.
[8] To support his opinion that the university was located in a high-risk crime area and that crime in the area was underreported by the university, plaintiff's expert witness relied upon plaintiff's exhibit No. 18 that was not admitted into evidence at trial (Baeppler Depo. at 28-30; Tr. 220). See, generally, Evid.R. 703 (providing that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing"); see, also, Shivers v. Univ. of Cincinnati, Franklin App. No. 02AP-395, 2002-Ohio-6633 (finding reversible error because an expert witness based his opinion in significant part on facts and/or data that was not admitted into evidence at trial). Because defendant has not challenged on cross-appeal whether plaintiff's expert witness's opinion lacked a proper evidentiary foundation, we do not address whether plaintiff's expert witness's opinion, that the university was located in a high-risk crime area and that the university underreported crime, was supported by a proper evidentiary foundation.
[9] See, generally, Section 1092, Title 20, U.S.Code. See, also, Allocco v. Coral Gables (S.D.Fla. 2002),221 F.Supp.2d 1317, fn. 12, affirmed (2003), 88 Fed.Appx. 380 (stating that "[t]he Clery Act, 20 U.S.C. § 1092, requires United States colleges and universities to collect and publish data on student safety, campus security policies, and campus crime statistics").
[10] The trial court did not expressly find defendant's witness to be qualified as an expert. However, by overruling plaintiff's objection concerning the qualifications of the defense expert witness, we conclude that the trial court impliedly found the defense expert witness was qualified to provide expert testimony. (Tr. 234.)
[11] In Haralson, this court applied both the "totality of the circumstances" test and the "prior similar acts" test when it concluded that no prior similar incidents occurred to put a bank on notice that an ATM at a bank branch was unsafe and that the totality of the circumstances was not such as to hold the bank to be on notice that an ATM was susceptible to armed robberies and shootings. Id. Similarly, in McKee, this court applied both foreseeability tests when it concluded that the appellants failed to present the trial court with evidence that the appellee knew, or should have reasonably anticipated, the assaults that were committed against appellants. Id. at 767.
[12] In Hetrick, the Supreme Court of Ohio explained:
In 1 Shearman and Redfield on Negligence (Rev. Ed.), 50, Section 24, in discussing the doctrine of reasonable anticipation, it is said: "Foresight, not retrospect, is the standard of diligence. It is nearly always easy, after an accident has happened, to see how it could have been avoided. But negligence is not a matter to be judged after the occurrence. It is always a question of what reasonably prudent men under the same circumstances would or should, in the exercise of reasonable care, have anticipated. Reasonable anticipation is that expectation created in the mind of the ordinarily prudent and competent person as the consequence of his reaction to any given set of circumstances. If such expectation carries recognition that the given set of circumstances is suggestive of danger, then failure to take appropriate safety measures constitutes negligence. On the contrary, there is no duty to guard when there is no danger reasonably to be apprehended. Negligence is gauged by the ability to anticipate. Precaution is a duty only so far as there is reason for apprehension. Reasonable apprehension does not include anticipation of every conceivable injury. There is no duty to guard against remote and doubtful dangers."
Id. at 358-359.
Similarly, here, foresight, not retrospect, must be considered when determining whether plaintiff's rape was foreseeable.