**[Cite as *C.L. v. McFadden*, 2026-Ohio-1150.]**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| C.L., a minor et al., | : | |
| Plaintiffs-Appellants, | : | |
| | | No. 25AP-317 |
| v. | : | (C.P.C. No. 19CR-3935) |
| Terry McFadden et al., | : | (ACCELERATED CALENDAR) |
| Defendants-Appellees. | : | |

───────────────────

D E C I S I O N

Rendered on March 31, 2026

───────────────────

**On brief:** *Cooper Elliott*, *Rex H. Elliott*, *Sean R. Alto*, and *Abigail F. Chin*, for appellants. **Argued:** *Kaela King*.

**On brief:** *Moyer Law Office LPA*, *Steven A Moyer*, and *Gregory A. Wetzel*, for appellees. **Argued:** *Steven A Moyer*.

───────────────────

APPEAL from the Franklin County Court of Common Pleas

BOGGS, P.J.

{¶ 1} Plaintiffs-appellants, C.L. and S.L., by and through their parents, J.L. and P.L., appeal the Franklin County Court of Common Pleas' judgment in favor of defendant-appellee, Carol McFadden, following submission of their claims of negligence and loss of consortium to the trial court on briefs. For the following reasons, we reverse the trial court's judgment and remand this matter to the trial court for further proceedings.

I. FACTS AND PROCEDURAL BACKGROUND

{¶ 2} For more than 20 years, Carol operated an unlicensed, Type-B daycare informally known as Carol's Daycare out of the home she shared with her husband, Terry McFadden. Carol usually had between four and six children in her daycare at a time. The daycare never had any employees. Following Terry's retirement in 2017, he would

occasionally help Carol with the daycare by, for example, picking the children up from preschool or school or watching the children if Carol needed to step away.

{¶ 3}    Before opening her daycare, Carol registered with Action for Children, a local childcare resource and referral agency.  Action for Children inspected Carol's home both before she started the daycare and multiple times over the years since.  Carol scheduled yearly inspections of her home by the local health and fire departments.  Carol never failed an inspection.

{¶ 4}    During her deposition, Carol agreed that she had an obligation to take reasonable steps to protect the children in her care and keep them safe.  She also agreed that the parents of the children in her care relied on her to do so.

{¶ 5}    J.L and P.L. have four children.  While pregnant with their eldest child, S.L., J.L. began seeking childcare recommendations from friends, neighbors, and congregants at her church.  She also contacted Action for Children, which provided her with a list of questions to ask potential childcare providers.  J.L.'s neighbor connected her with Carol, who cared for the neighbor's child.  J.L. and P.L visited Carol's home, interviewed Carol, and called Carol's references.  J.L. testified that Carol "came highly recommended" and "had that Presbyterian background we liked." (J.L. Dep. at 11.)

{¶ 6}    In July 2012, J.L. and P.L. placed S.L., then approximately 12 weeks old, with Carol.  They placed their second daughter, C.L., in Carol's daycare in May 2014 and placed their first son, L.L., in Carol's daycare in December 2015.

{¶ 7}    Prior to April 2019, J.L. had no serious concerns about Carol's care for the children.  Over the years, J.L. and P.L. made occasional unannounced stops at Carol's home without incident.  As to their relationship with the McFaddens, J.L. stated, P.L. "often called them coparents, and I would agree with that statement," noting that Carol was "helping to raise" the children.  *Id.* at 13.  Carol and Terry attended family events such as the children's baptisms and birthday parties.

{¶ 8}    On April 5, 2019, a Friday afternoon, J.L. made an unannounced early stop at Carol's home to pick up C.L. and L.L.  When she arrived, Carol was upstairs, and Terry was alone on the first floor with four-year-old C.L. and another young child.  L.L. was asleep upstairs.  C.L. was wearing no pants or underwear when J.L. arrived, and while putting on C.L.'s underwear, J.L. noticed redness around C.L.'s vagina, but she "didn't think much of

it." *Id.* at 15.  Over the following weekend, however, S.L. and C.L. reported to their parents that Terry had touched them inappropriately.  C.L. stated that Terry made her do the splits and stretched her legs out until they hurt, and S.L. stated that Terry put his hand down her pants.  J.L. and P.L. reported their daughters' accounts to a social worker at Nationwide Children's Hospital, who in turn reported the allegations to Franklin County Children Services and the Grandview Police Department.

{¶ 9}    Terry was arrested on April 8, 2019, indicted on April 17, 2019, and ultimately pled guilty to two counts of rape of C.L. and S.L.  The Franklin County Court of Common Pleas sentenced him to 22 years in prison.

{¶ 10} Prior to April 2019, Carol had received no complaints from parents of children in her daycare, from her own now-grown daughters, from her daughters' friends, or from anyone else about inappropriate conduct by Terry.  Carol ceased operating the daycare on April 8, 2019.

{¶ 11} Appellants filed this civil action against Carol, Terry, and Carol's Daycare on May 14, 2019, alleging claims for negligence, assault and battery, negligent training and supervision, respondeat-superior liability, intentional infliction of emotional distress, and loss of consortium.  Appellants dismissed their claims against Terry with prejudice on January 7, 2021.

{¶ 12} In lieu of a trial, the parties submitted the matter to the trial court on trial briefs, filed in late 2021, and trial depositions of Carol, J.L., and P.L.  Appellants stated in their trial brief that their remaining claims were for negligence and loss of consortium against Carol only.  After more than three years, the trial court issued its decision and order, entering judgment in favor of Carol, on March 13, 2025.  The trial court held that Carol is not liable for negligence because "no duty existed."  *Id.* at 10.  The trial court based that conclusion on its determination that Terry's criminal acts were not reasonably foreseeable, as Carol had no knowledge of and no reason to suspect Terry's criminal propensities. Having concluded that Carol was not negligent, the trial court held that Carol could not be liable for loss of consortium.

{¶ 13} Appellants filed a timely notice of appeal.

## II. ASSIGNMENT OF ERROR

{¶ 14} Appellants assert a single assignment of error: "The trial court erred when entering judgment in favor of Defendant-Appellee Carol McFadden and against Plaintiffs-Appellants."

## III.  ANALYSIS

{¶ 15} Appellants make two general arguments under their single assignment of error.  First, they argue that, as a matter of law, Carol owed a duty to the children in her care.  Second, they argue that they proved by the greater weight of evidence that Carol breached her duty to S.L. and C.L. and that her breach was the proximate cause of appellants' damages.

### A.  Negligence and duty

{¶ 16} "In general, a cause of action for negligence requires proof of (1) a duty requiring the defendant to conform to a certain standard of conduct, (2) breach of that duty, (3) a causal connection between the breach and injury, and (4) damages." *Cromer v. Children's Hosp. Med. Ctr. of Akron*, 2015-Ohio-229, ¶ 23, citing *Menifee v. Ohio Welding Products, Inc.*, 15 Ohio St.3d 75, 77 (1984).  To recover on a claim of negligence, a plaintiff must demonstrate each of those elements.  *Whiting v. Ohio Dept. of Mental Health*, 141 Ohio App.3d 198, 202 (10th Dist. 2001).  The existence of a duty is a question of law for the court to determine.  *Mussivand v. David*, 45 Ohio St.3d 314, 318 (1989).  On the other hand, "[w]hether the defendant *breached* a duty is normally a question of fact for the trier of fact to decide." (Emphasis added.)  *Cameron v. Univ. of Toledo*, 2018-Ohio-979, ¶ 62 (10th Dist.), citing *Miller v. Ohio Dept. of Transp.*, 2014-Ohio-3738, ¶ 42 (10th Dist.).

{¶ 17} The trial court decided this case solely on the first element of appellants' negligence claim—existence of a duty; it concluded, "no duty existed," because Terry's criminal acts "were not reasonably foreseeable to [Carol] as she had no knowledge of his criminal propensities and had no reason to suspect the same."  (Mar. 13, 2025 Decision & Order at 10.)  As a question of law, a trial court's determination of the existence of a duty is subject to de novo review on appeal.  *Cameron* at ¶ 52, citing *Wallace v. Ohio Dept. of Commerce*, 2002-Ohio-4210, ¶ 22.

{¶ 18} Under Ohio tort law, duty "refers to the relationship between the plaintiff and the defendant from which arises an obligation on the part of the defendant to exercise due

care toward the plaintiff." *Commerce & Indus. Ins. Co. v. Toledo*, 45 Ohio St.3d 96, 98 (1989), citing *Baltimore & Ohio Southwestern Ry. Co. v. Cox*, 66 Ohio St. 276 (1902). The Supreme Court of Ohio has explained:

> Duty "* * * is the court's 'expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' (Prosser, Law of Torts (4th ed. 1971) pp. 325-326.) Any number of considerations may justify the imposition of duty in particular circumstances, including the guidance of history, our continually refined concepts of morals and justice, the convenience of the rule, and social judgment as to where the loss should fall. (Prosser, *Palsgraf Revisited* (1953), 52 Mich. L. Rev. 1, 15). * * *"

*Mussivand* at 318, quoting *Weirum v. RKO Gen., Inc.*, 15 Cal.3d 40, 46 (1975).

{¶ 19} It is axiomatic that duty is essential for a negligence claim, because " '[a] person's failure to exercise ordinary care in doing or failing to do something will not amount to actionable negligence unless such person owed to someone injured by such failure a duty to exercise such ordinary care.' " *Snay v. Burr*, 2021-Ohio-4113, ¶ 14, quoting *United States Fire Ins. Co. v. Paramount Fur Serv., Inc.*, 168 Ohio St. 431 (1959), paragraph three of the syllabus. In other words, no legal liability for negligence can arise absent a duty. *Sens v. Fitness Internatl. LLC*, 2023-Ohio-1004, ¶ 21 (10th Dist.), citing *Smallwood v. MCL, Inc.*, 2015-Ohio-1235, ¶ 7 (10th Dist.). A duty may be established by common law, legislative enactment, or by the particular facts and circumstances of the case. *Chambers v. St. Mary's School*, 1998-Ohio-184, ¶ 9, citing *Eisenhuth v. Moneyhon*, 161 Ohio St. 367 (1954), paragraph one of the syllabus.

### B. A special relationship or undertaking a voluntary act can give rise to a duty to aid or protect another

{¶ 20} The common law in Ohio is that a person "has no affirmative duty to aid or protect another absent a special relationship justifying the imposition of a duty." *Carter v. Reese*, 2016-Ohio-5569, ¶ 18, citing *Estates of Morgan v. Fairfield Family Counseling Ctr.*, 1997-Ohio-194, ¶ 35, citing 2 Restatement of the Law 2d, Torts, § 314-319, at 116-130 (1965). *See also Simpson v. Big Bear Stores Co.*, 1995-Ohio-203, ¶ 16.

{¶ 21} 2 Restatement of the Law 2d, Torts, § 314A, describes certain special relationships that give rise to a duty to aid or protect another. As relevant here, section

314A(4) recognizes such a special relationship when one voluntarily takes custody of another under circumstances that deprive the other of normal opportunities for protection. That relationship gives rise to a duty on the part of the custodian to take reasonable action to protect the other from unreasonable risk of physical harm. *Id.* The duty "extends to risks arising out of the actor's own conduct . . . or from the acts of third persons, whether they be innocent, negligent, intentional, or even criminal." *Id.*, at comment *d*. The duty described in section 314A(4) is one in which the custodian must exercise reasonable care under the circumstances. *Id.* at comment *e*; *Peyer v. State Water Serv. Co.*, 130 Ohio App.3d 426, 435 (7th Dist. 1998).

{¶ 22} In *Peyer*, the Seventh District Court of Appeals reversed the trial court's entry of summary judgment in favor of third-party defendant Thomas McCutcheon, who took his 11-year-old son and his son's 11-year-old friend, Josh, on a fishing trip, during which Josh was injured when he fell from a concrete wall spanning the length of a dam. The trial court found no evidence that McCutcheon breached a duty of ordinary care or failed to reasonably monitor Josh, but the Seventh District reversed the trial court's judgment, relying on 2 Restatement of the Law 2d, Torts, § 314A(4):

> Under Ohio law, it is unquestionable that Josh's mother has a duty to protect her child. When McCutcheon voluntarily took Josh away from his mother's control and supervision, McCutcheon took away Josh's mother's ability to protect her minor son and Josh's ability to receive his mother's protection. While an eleven year old child possesses some ability to care for himself, he is not yet an adult and still requires guidance and protection.

*Peyer* at 434. In exercising a duty that arises under section 314A, the custodian need not act "until the custodian knows or has reason to know that the person is endangered, ill or injured." *Id.*, citing Restatement of the Law, Torts, § 314A, comments *e* and *f*. The Seventh District held that genuine issues of material fact remained as to whether McCutcheon voluntarily assumed a duty to protect Josh. It also held that genuine issues of material fact remained as to the foreseeability of harm, based on conflicting evidence of whether McCutcheon had observed Josh cross the dam prior to his fall.

{¶ 23} A duty to protect another may also arise when a person undertakes a voluntary act necessary for the protection of the other. *See Carter v. Reese*, 2016-Ohio-5569, ¶ 18, citing 2 Restatement of the Law 2d, Torts, § 323 (1965). Section 323 states:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.

In other words, when a person undertakes a voluntary act that he should recognize as necessary for the protection of another, the person must exercise due care under the circumstances when performing that act. *Briere v. Lathrop Co.*, 22 Ohio St.2d 166, 172 (1970). The Supreme Court of Ohio has recognized, " 'It may well be that, by voluntarily undertaking to protect [a child] * * * against a danger it concededly played no part in creating, the State acquired a duty under state tort law to provide [the child] with adequate protection against that danger.' " *Brodie v. Summit Cty. Children Servs. Bd.*, 51 Ohio St.3d 112, 115-116 (1990), quoting *DeShaney v. Winnebago Cty. Dept. of Social Servs.*, 489 U.S. 189, 201-202 (1989). A duty based on a voluntary undertaking, as described in section 323 of the Restatement, does not require proof of a special relationship between the plaintiff and the defendant. *Fonderlin v. Trumbull Family Fitness,* 2023-Ohio-767, ¶ 29 (11th Dist.).

{¶ 24} Appellants argue that Carol owed a duty of care to the children in her care, both due to the special, custodial relationship between Carol and the children and because Carol voluntarily undertook to render daycare services she should have recognized as necessary for the children's protection. We agree.

## C. Lack of foreseeability does not relieve Carol of the duty imposed on her by the common law

{¶ 25} The trial court concluded that Carol did not owe a duty of care based on evidence that Terry's criminal acts were not reasonably foreseeable to Carol. Its analysis stemmed from two premises: (1) the existence of a duty largely depends on the foreseeability of harm, and (2) there is no common-law duty to anticipate or foresee

criminal activity.  *See Fed. Steel & Wire Corp., v. Rohlin Constr. Co*, 45 Ohio St.3d 171, 174 (1989).

{¶ 26}  *Fed. Steel & Wire Corp.* asked whether a contractor had a duty to maintain its job site so as to protect against vandalism that caused damage to another's property.  In answering that question, the Supreme Court of Ohio stated, " 'the existence of a duty depends on the foreseeability of the injury.' "  *Id.* at 174, quoting *Menifee*, 15 Ohio St.3d at 77.  "As a society, we expect people to exercise reasonable precautions against the risks that a reasonably prudent person would anticipate."  *Cromer* at ¶ 24, citing *Commerce & Industry Ins. Co.* at 98, but not "against risks that the reasonable person would not foresee." *Id.*, citing *Menifee* at 77 and Keeton, Dobbs, Keeton & Owen, *Prosser and Keeton on the Law of Torts*, § 43, 280 (5th Ed. 1984).  "The foreseeability of the risk of harm is not affected by the magnitude, severity, or exact probability of a particular harm, but instead by the question of whether *some* risk of harm would be foreseeable to the reasonably prudent person." (Emphasis in original.)  *Cromer* at ¶ 24, citing *Gedeon v. East Ohio Gas Co.*, 128 Ohio St. 335, 339 (1934).

{¶ 27}  The Supreme Court also recognized, "Ordinarily, there is no duty to control the conduct of a third person by preventing him or her from causing harm to another, except in cases where there exists a special relationship between the actor and the third person which gives rise to a duty to control, or between the actor and another which gives the other the right to protection."  *Fed. Steel & Wire Corp.* at 173.  As "the law usually does not require the prudent person to expect the criminal activity of others" or to protect against injury resulting therefrom, the Supreme Court stated, "there is no common-law duty to anticipate or foresee criminal activity."  *Id.* at 174.  "The foreseeability of a criminal act depends on the knowledge of the defendant, which must be determined by the totality of the circumstances, and it is only when the totality of the circumstances are 'somewhat overwhelming' that the defendant will be held liable."  *Evans v. Ohio State Univ.*, 112 Ohio App.3d 724, 742 (10th Dist. 1996), quoting *Feichtner v. Cleveland*, 95 Ohio App.3d 388, 396 (8th Dist. 1994).  Although *Fed. Steel & Wire Corp.* did not involve a special relationship between the plaintiff and the defendant or between the defendant and the third-party tortfeasor, the Supreme Court acknowledged that a special relationship may give rise to a duty to protect against injury caused by a third party, "as an exception to the

general rule of no liability." *Id.*, citing Crouse, *Negligence Liability for the Criminal Acts of Another*, 15 J. Marshall L. Rev. 459, 465 (1982).

{¶ 28} In *Cromer*, the Supreme Court of Ohio more specifically addressed the duty that may arise from a special relationship. It recognized both that "foreseeability is an important part of all negligence claims," *Cromer* at ¶ 24, and that the existence of a duty "usually arises from the foreseeability of injury to someone in that other person's 'general situation.' " *Id.* at ¶ 25. But it also emphasized, "there 'are also certain legally recognized relationships between parties that can establish the existence of an actor's duty to another person.' " *Id.*, quoting *Gedeon* at 339 and citing *Estates of Morgan*, 1997-Ohio-194. *Cromer* involved the special relationship between physicians and their patients. The Supreme Court stated, "foreseeability is irrelevant to a determination of a physician's duty," because "the existence of the physician's duty to that patient is already clear." *Id.* at ¶ 26; *see also Masterson v. Brody*, 2022-Ohio-3428, ¶ 24 (8th Dist.), citing *Godwin v. Facebook, Inc.*, 2020-Ohio-4834, ¶ 21 (8th Dist.) ("If a special relationship gives rise to a duty to another, foreseeability of the injury is not a consideration as to the existence of a duty."). That does not mean that foreseeability is irrelevant in determining a defendant's *liability* in negligence when a special relationship exists; in that context, foreseeability is relevant to the scope of the duty owed, not to its existence. *Cromer* at ¶ 29; *Masterson* at ¶ 24, citing *Gedeon* at 338 and *Simpson*, 73 Ohio St.3d at 134, 1995-Ohio-203 ¶ 19 (foreseeability of harm "concerns the scope of the duty owed, not its existence").

{¶ 29} The trial court's focus on foreseeability to determine the threshold issue—whether Carol owed a duty of care to appellants—was misplaced. The trial court relied on *Kleisch v. Cleveland State Univ.*, 2005-Ohio-1285 (Ct. of Cl.), *aff'd*, 2006-Ohio-1300 (10th Dist.), and *Shivers v. Univ. of Cincinnati*, 2006-Ohio-5518 (10th Dist.)—two cases in which, under the common law of premises liability, university defendants were found not liable in negligence for the criminal conduct of third parties against students. The plaintiff in *Kleisch* was raped while studying in a university lecture hall, and the plaintiff in *Shivers* was raped in a women's bathroom of her co-ed, on-campus dormitory. Neither case supports the trial court's conclusion that, under the facts and circumstances of this case, Carol owed no duty to appellants.

{¶ 30} In *Kleisch*, this court held that the plaintiff's presence on campus afforded her the status of an invitee, and we applied the common-law duty that a business owner owes its invitees—the duty to exercise ordinary care in maintaining its premises in a reasonably safe condition so that its invitees are not unnecessarily and unreasonably exposed to dangerous conditions. *Kleisch*, 2006-Ohio-1300, at ¶ 13 (10th Dist.); *see also Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203, 203 (1985). The Court of Claims had determined that the plaintiff failed to prove that the university breached a duty owed to her and, as part of its analysis, had found the plaintiff's rape was unforeseeable. This court stated, however, that the trial court's foreseeability finding went to the question of breach, not to the existence of a duty. *Id*. at ¶ 14, 26. Similarly, in *Shivers*, we characterized the defendant's argument regarding foreseeability as challenging "the *scope* of [the university's] duty." (Emphasis added.) *Kleisch*, 2005-Ohio-5518, at ¶ 5 (10th Dist.). With respect to the existence of a duty, we relied on our then recent decision in *Kleisch* and the determination that a university owes the same duty of care to its students as a business owes to its invitees. Thus, in both cases, the question of foreseeability concerned the scope of the university's duty and whether the university breached that duty, not whether the university owed a duty to the plaintiffs at all.

{¶ 31} More analogous to the facts of this case than either *Kleisch* or *Shivers* is *Fonderlin*, in which the Eleventh District Court of Appeals reviewed and reversed a summary judgment in favor of the defendant, Trumbull Family Fitness, on claims arising out of a sexual assault of the plaintiff's minor son by two other minors while the children were unsupervised in a locker room during an afterschool program operated by the defendant. The trial court held that the defendant "was under no duty to protect [the plaintiff's] son from" the criminal activity directed at him, because the defendant "was not aware of any similar prior incidents or allegations of sexual assault [and] there was no evidence that [it] knew or should have known that the two minors would sexually assault" the plaintiff's son. *Fonderlin*, 2023-Ohio-767, at ¶ 16 (11th Dist.).

{¶ 32} On appeal, the plaintiff argued that the trial court had erred by applying a general premises-liability framework to her negligence claim, and the Eleventh District agreed. It held that the trial court had erred by determining the duty owed by defendant was that of an ordinary business to an invitee, because the plaintiff made a general claim of

negligence under 2 Restatement 2d of Torts, § 323, based on the defendant's undertaking to render services it should have recognized as necessary for the protection of the participants in its afterschool program. The appellate court concluded the plaintiff sufficiently argued that the defendant voluntarily undertook a duty to supervise the participants in its afterschool program and that the evidence presented genuine issues of material fact as to whether the defendant failed to meet that duty when it failed to supervise the children in the locker rooms. *Id.* at ¶ 3, 36.

{¶ 33} Here, both the special custodial relationship between Carol and the children, and Carol's voluntary undertaking to supervise the children render the issue of foreseeability of the harm the children suffered irrelevant to the *existence* of a duty. Carol assumed custody of the young children under circumstances that deprived the children of their normal opportunities for protection, *i.e.* protection by their parents, and she thereby undertook a duty to protect the children against an unreasonable risk of physical harm. *See* 2 Restatement 2d of Torts, § 314A. As a matter of policy, the special custodial relationship imposed upon Carol a duty to protect and supervise the children in her care. *See O.L. v. R.L.*, 62 S.W.3d 469, 475 (Mo. App. 201) ("Public policy as expressed in the law has already determined that it is foreseeable that a child may be injured by himself or another if not adequately supervised."). Separate from the special custodial relationship, a duty of care also arose from Carol's voluntary undertaking to render services that she should have recognized as necessary for the children's protection. By offering daycare services and agreeing to care for appellants' children, Carol voluntarily assumed a duty to exercise reasonable care in performing that undertaking, so as not to increase the risk of harm to the children. *See* 2 Restatement 2d of Torts, § 323. Carol, in fact, admitted in her deposition she had a duty to take reasonable steps to protect the children in her care.

{¶ 34} Having concluded that a duty of care arose as a matter of law under the facts of this case, we must likewise conclude that the trial court erred in determining that Carol did not owe a duty to the children in her care. On this basis alone, we sustain appellants' assignment of error.

### D. Other considerations

{¶ 35} The trial court's erroneous determination that Carol owed no duty of care ended its analysis; it did not consider the remaining elements of appellants' negligence

claim, and we decline to address those remining elements in the first instance on appeal. Thus, on remand, the trial court will have to consider whether Carol's conduct—in leaving the children alone with Terry, whom appellants had not chosen to care for their children—constituted a breach of the duty of care we have identified here.

{¶ 36} As the trial court acknowledged in its decision, the Supreme Court has long recognized that "the amount of care required to discharge a duty owing to a child of tender years is necessarily greater than that required to discharge a duty to an adult exposed to the same danger." *DiGildo v. Caponi*, 18 Ohio St.2d 125 (1969).

> " 'Children of tender years, and youthful persons generally, are entitled to a degree of care proportioned to their inability to foresee and avoid the perils that they may encounter. * * * The same discernment and foresight in discovering defects and dangers cannot be reasonably expected of them, that older and experienced persons habitually employ; and therefore, the greater precaution should be taken, where children are exposed to them.' "

*Bennett v. Stanley*, 2001-Ohio-128, at ¶ 14, quoting *DiGildo* at 127, quoting 39 Ohio Jurisprudence 2d 512, Negligence, § 21 (1959). While the trial court acknowledged these principles in its decision, its conclusion that Carol did not owe a duty to appellants essentially eliminated consideration of the young ages of the children. Thus, on remand, the trial court must consider the young ages of the children and their relative inability to protect themselves from harm when determining the scope of Carol's duty of care and whether she breached that duty by leaving the children unattended with Terry.

{¶ 37} Finally, although it is not binding on Ohio courts, we find persuasive the reasoning in *G.E.T. v. Barron*, 4 S.W.3d 622 (Mo. App. 1999), in which the plaintiffs alleged that the defendant, their childcare provider, negligently supervised their son, G.E.T., who was sexually molested by the defendant's teenage son while in defendant's care. The defendant offered childcare from her home for up to four children at a time. Her teenage son was sometimes present, but the defendant did not delegate any responsibility for the care of the other children to him. Even so, G.E.T. testified that the defendant regularly left the children she cared for alone with her son, who molested him daily, often in defendant's presence but without her actual knowledge. The defendant did not dispute that she had a duty to protect the children in her care from unreasonable risks of harm, but she denied having breached that duty.

{¶ 38} Starting with the premise that the defendant owed a duty of care to protect G.E.T. from unreasonable risks of harm, the court of appeals considered whether injury to G.E.T. was reasonably foreseeable in determining whether the defendant had breached her duty to him. It stated, "whether the duty of ordinary care has been breached turns on whether a reasonable person could have foreseen that injuries of the type suffered might occur under the circumstances." *Id.* at 624. But the court rejected the defendant's argument that the harm suffered by G.E.T. was unforeseeable simply because she was unaware and had no reason to know of her son's sexual proclivities; it stated, "This argument is flawed because it presumes a child care provider's absence does not constitute a breach of the duty of ordinary care." *Id.* at 625. In reversing the trial court's entry of summary judgment for the defendant, the court of appeals stated: " 'Though we wish it were otherwise, a jury could reasonably find that the . . . abuse of young children who are not properly supervised is foreseeable and is one of the dangers parents and other care givers expressly protect children from by providing them proper supervision or care.' " *Id.*, quoting *Wallace v. Boys Club of Albany, Ga., Inc.*, 211 Ga.App. 534 (1993). The *Wallace* court further stated, "[S]imply because no child had ever been the victim of . . . assault near the defendant's premises does not establish, as a matter of law, that such a danger to an unsupervised child of tender years is unforeseeable in this day." *Id.* at 537.

{¶ 39} The trial court here distinguished *G.E.T.*, because *G.E.T.* was decided on a motion for summary judgment, not on the merits, and because the criminal actor in *G.E.T.* was the defendant's son, not her husband. While the trial court suggests that the defendant in *G.E.T.* had a duty to control the conduct of her minor son, which does not exist as to one's spouse, the *G.E.T.* court did not rely on a special relationship between the defendant and her son; it focused instead on the special relationship between the defendant and G.E.T., the child who had been entrusted to her care. That relationship is indistinguishable from the relationship between Carol and the children enrolled in her daycare. Further, while the *G.E.T.* court was constrained by the standard of review applicable to a motion for summary judgment, that standard of review does not discount its legal holding that the defendant's lack of knowledge of her son's sexual proclivities did not, as a matter of law, establish that harm to the children she left unattended with him was unforeseeable. Application of that

holding here suggests that Carol's lack of specific knowledge as to facts suggesting Terry would harm the children she left unattended with him is not, in and of itself, dispositive.

{¶ 40} We do not suggest, one way or the other, whether appellants must prevail on their negligence claims against Carol. But because the trial court erred in concluding that Carol owed no duty to the children, and entered judgment in favor of Carol on that erroneous basis alone, we must remand this matter for the trial court to consider whether Carol breached the duty of care we have determined she owed and whether that breach was a proximate cause of the appellants' harm. While questions of foreseeability are relevant to the unanswered question whether Carol breached the duty of care she owed to the children, the trial court should also remain mindful that the youth of the children involved increases the care necessary to meet that duty.

## IV. CONCLUSION

{¶ 41} For these reasons, we sustain appellants' assignment of error, reverse the judgment of the Franklin County Court of Common Pleas, and remand this matter for further proceedings consistent with this decision.

*Judgment reversed*;
*cause remanded.*

JAMISON and DINGUS, JJ., concur.

———————————